UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Hawke Media, LLC,                                          File No. 23-cv-2496 (ECT/TNL)

        Plaintiff,

v.                                                              **OPINION AND ORDER**

The Stable Group Holdings, LLC, and
Does 1-10,

        Defendants.

---

Bryan R. Battina, Craig W. Trepanier, and Nicholas N. Sperling, Trepanier MacGillis
Battina, P.A., Minneapolis, MN; and Gregory W. Patterson, Law Offices of Gregory W.
Patterson, Manhattan Beach, CA, for Plaintiff Hawke Media, LLC.

Teresa Michaud, Cooley, LLP, Los Angeles, CA; Joanna Salmen and Paul William
Magyar, Foley & Mansfield, PLLP, Minneapolis, MN; Paul Chander, Baker & McKenzie
LLP, Los Angeles, CA; and Michael A. Collyard and Peter Ihrig, Robins Kaplan LLP,
Minneapolis, MN, for Defendant The Stable Group Holdings, LLC.

---

In May 2020, Plaintiff Hawke Media and Defendant Stable Group Holdings signed

a mutual non-disclosure agreement. The agreement's stated purpose was to facilitate

discussions regarding the possibility of Stable acquiring Hawke. After the non-disclosure

agreement was signed, Hawke shared confidential information with Stable.

Two factual allegations are at the core of this diversity case. First, Hawke alleges

that Stable used Hawke's confidential information for Stable's benefit, thus breaching the

non-disclosure agreement. Second, Hawke alleges that Stable never intended to acquire

Hawke, meaning Stable obtained Hawke's confidential information through a ruse.

Hawke's legal claims correspond to these allegations. In its operative Amended Complaint, Hawke asserts a breach-of-contract claim arising from Stable's alleged misuse of Hawke's confidential information, and Hawke asserts a fraud claim arising from the allegation that Stable's exploration of an acquisition was a ruse to acquire Hawke's confidential information for Stable's benefit.

Stable seeks dismissal of just the fraud claim under Federal Rule of Civil Procedure 12(b)(6). The motion will be granted because Hawke has not alleged facts to support this claim with the required particularity. Before getting to the Rule 12(b)(6) motion's merits, it is necessary to clarify or resolve threshold issues regarding subject-matter jurisdiction, the factual record's scope, and Stable's compliance with the District's meet-and-confer requirement.

I

There is enough to show at this stage that subject-matter jurisdiction exists, but why this is so takes some explaining and ultimately depends on information that is not in the Court's public case file. Hawke filed this case in this District based on diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Compl. [ECF No. 1] ¶ 11; Civil Cover Sheet [ECF No. 1-5] §§ 2, 3. As the party invoking federal subject-matter jurisdiction, it was Hawke's burden to show the presence of diversity jurisdiction. *See, e.g.*, *Barnett v. Bryce's Bail Bonding, Inc.*, 534 Fed. App'x 579, 580 (8th Cir. 2013) (per curiam) (citing *Walker v. Norwest Corp.*, 108 F.3d 158, 161 (8th Cir. 1997)).

As the case caption indicates, Hawke and Stable are limited liability companies, or LLCs. An LLC's citizenship is that of its member or members. *E3 Biofuels, LLC v.*

2

*Biothane, LLC*, 781 F.3d 972, 975 (8th Cir. 2015). If an LLC's members include another LLC (or LLCs), then a complaint filed originally in federal court must identify each of the members of that LLC (or those LLCs) and, as to each such member, its citizenship, continuing until there are no LLCs left in the line. *See Lindley Contours, LLC v. AABB Fitness Holdings, Inc.*, 414 Fed. App'x 62, 64 (9th Cir. 2011); *Key Enters., LLC v. Morgan*, No. 12-cv-2628 (PJS/JSM), 2013 WL 353911, at *1–4 (D. Minn. Jan. 29, 2013); *see also Chaballa v. SP Healthcare Mgmt. LLC*, No. CIV-22-772-F, 2022 WL 4002658, at *1 n.4 (W.D. Okla. Sept. 1, 2022).

Hawke's original Complaint met these rules with respect to Hawke, but not with respect to Stable. The original Complaint alleged that Hawke has two members, both of whom are individuals and both of whom are California citizens. Compl. ¶ 6. The Complaint did not do likewise for Stable. The Complaint alleged on information and belief that Stable has seven members, six of which are LLCs, but the Complaint did not identify either the members of those LLCs or their citizenship. *Id.* ¶ 7.[1] As support for its allegations regarding the identity of Stable's members, the Complaint cited and attached a "Statement of Information" form Stable filed with the California Secretary of State on November 22, 2022. *Id.* Ex. 3. This form identifies Stable's seven members as of the form's November 2022 filing date (the same members identified in the Complaint), but the

---

[1]    The seven members identified in the Complaint are: Accenture Inc.; TLCS Stable Blocker LLC; TLDL II Stable Blocker LLC; SC TLCP Stable Blocker LLC; ESBIC II Stable Blocker LLC; TLDL III Stable Blocker, LLC; and The Stable Group Holdings Blocker LLC. Compl. ¶ 7.

form does not include information that might answer the LLC-citizenship jurisdictional question—that is, the citizenship of Stable's members. *See id.*

The original Complaint's allegations regarding Stable's ownership were consistent with Stable's initial description of its ownership. In a Rule 7.1 corporate disclosure statement filed on September 8, 2023—less than one month after Hawke filed this case—Stable certified that, as of that date, one member, Accenture Inc., owned ten percent or more of its "stock," and "other members" each owned less than ten percent of Stable's stock. *See* ECF No. 9. In other words, at least as of September 8, 2023, Stable was representing that it had more than one member in addition to Accenture. It wasn't Stable's burden, but this disclosure statement did not answer the LLC-citizenship question. The statement did not identify all of Stable's members, and it did not identify any member's citizenship. *See id.*

The original Complaint's failure to allege Stable's citizenship prompted an order. ECF No. 31. The order permitted Hawke to amend the original Complaint to address this jurisdictional question. *Id.* at 2 ¶ 1. If Hawke opted not to amend, or if Hawke's amendments did not adequately allege the presence of subject-matter jurisdiction, the case would be dismissed. *See id.* at 2–3 ¶¶ 2–3.

In response to the order, Hawke filed an Amended Complaint. In contrast to the original Complaint, the Amended Complaint alleged that Stable has just one member, Accenture. Am. Compl. [ECF No. 33] ¶ 7. Accenture, according to the Amended Complaint, is incorporated under Delaware law and maintains its principal place of business in Illinois. *Id.* If that were all we had, we'd have been good. I could have

4

presumed that counsel had inquired and determined that the original Complaint's allegations concerning Stable's citizenship were incorrect. And the revised allegations— accepted as true—show that Hawke and Stable have diverse citizenship.

The problem is that the Amended Complaint's revised jurisdictional allegations were based on two sources, and those two sources prompted questions. (1) Like the original Complaint, the Amended Complaint cited and attached the Statement of Information Stable filed with the California Secretary of State. *See* Am. Compl. ¶ 7, Ex. 3. Again, that document shows that, as of its November 22, 2022 filing date, Stable had seven members, not one lone member. *Id.* Ex. 3. The Amended Complaint did not address this inconsistency. (2) As Hawke explained at the hearing on Stable's Rule 12(b)(6) motion, the Amended Complaint's allegation that Accenture is Stable's only member also was based on an amended corporate disclosure statement Stable filed on January 3, 2024. *See* ECF No. 32. In this amended disclosure statement, Stable's counsel certified that, *as of the statement's January 3 filing date*, Accenture was Stable's only member. *See id.* Though Rule 7.1 did not require it, the amended statement "also certifie[d] Accenture Inc. is a Delaware entity, with its principal place of business in Illinois." *Id.* The problem with Hawke's reliance on these assertions is that they did not settle the jurisdictional question. "It has long been the case that 'the jurisdiction of the court depends upon the state of things *at the time of the action brought.*'" *Grupo Dataflux v. Atlas Glob. Grp.*, 541 U.S. 567, 570 (2004) (emphasis added) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539 (1824)); *see Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 922–23 (8th Cir. 2023) (explaining time-of-filing rule's application to citizenship questions in diversity cases), *cert. granted*,

--- U.S. ---, 144 S. Ct. 1455 (2024).  Stable's amended corporate disclosure statement explicitly answered the citizenship question "as of" January 3, 2024, not as of August 14, 2023, when Hawke filed this case.

These questions received close attention at the hearing.  After the parties' attention was directed to the time-of-filing rule, we took a break in the proceedings, and Stable's counsel inquired further regarding the situation.  That inquiry enabled counsel to represent at the hearing that Accenture became Stable's sole member as of February 28, 2023, or several months before Hawke filed this case, and remained Stable's sole member up through the case's filing.  According to counsel, the description of Stable's membership in its original corporate disclosure statement was incorrect.  Paired with the Amended Complaint's allegation that Accenture is Stable's sole member, counsel's representation is enough to settle the subject-matter jurisdiction question at this stage.[2]

## II

Stable asks that several documents beyond the Amended Complaint be considered in the adjudication of its Rule 12(b)(6) motion.  These documents include a complaint Hawke filed in a California state court in December 2022 and six press releases issued by Stable.  *See* ECF No. 22 at 1–2; *see also* ECF No. 20 Exs. 1–7.  Stable argues that these documents are fair game for judicial notice under Federal Rule of Evidence 201.  Stable identifies no other legal ground that might justify the documents' consideration.

---

[2]     No hearing transcript has been ordered, meaning this summary is the only documentation of counsel's representation in the case file.  The parties are directed to promptly alert the Court if discovery casts doubt on these facts or the presence of subject-matter jurisdiction.

Rule 201 says, in relevant part:

> **(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:
>
> > **(1)** is generally known within the trial court's territorial jurisdiction; or
> >
> > **(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
>
> **(c) Taking Notice.** The court:
>
> > **(1)** may take judicial notice on its own; or
> >
> > **(2)** must take judicial notice if a party requests it and the court is supplied with the necessary information.

Fed. R. Evid. 201(b)–(c).

Several rules govern Rule 201's application. Textually, Rule 201 says that a court may take judicial notice of "a fact." *Id.* It does not say that a court may take judicial notice of a document. No doubt a party may rely on a document to establish a fact that may be judicially noticed. *See, e.g.*, *Klossner v. IADU Table Mound MHP, LLC*, 565 F. Supp. 3d 1118, 1123 (N.D. Iowa 2021) (recognizing that "[c]ourts may properly take judicial notice of newspapers and other publications as evidence of what was in the public realm at the time"). But as our Eighth Circuit Court of Appeals has explained, taking judicial notice of facts in documents is generally inappropriate to the extent the documents are offered for the "truth of the matters within them and inferences to be drawn from them." *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 543 n.4 (8th Cir. 2015) (quoting *Kushner v. Beverly Enters.*, 317 F.3d 820, 832 (8th Cir. 2003)); *see Klossner*, 565 F. Supp.

3d at 1123 (recognizing that a court may not take judicial notice of a document "as evidence that the contents in the publication were accurate"). "Caution must also be taken to avoid admitting evidence, through the use of judicial notice, in contravention of the relevancy, foundation, and hearsay rules." *Am. Prairie Constr. Co. v. Hoich*, 560 F.3d 780, 797 (8th Cir. 2009).

Applying these rules here shows it would be a mistake to take Rule 201 judicial notice of the California complaint and press releases as Stable requests. (1) Stable does not explain the California complaint's relevance to its Rule 12(b)(6) motion. In its brief supporting the judicial-notice request, Stable does not say why or how it might rely on the California complaint. *See* ECF No. 22 at 3–4. In its separate brief supporting its Rule 12(b)(6) motion, Stable cites the California complaint, but only to describe procedural background. *See* ECF No. 19 at 6. Stable does not connect the California complaint—or any fact connected to the complaint—to a justification for dismissing Hawke's fraud claim.[3] (2) Stable takes a different approach with respect to the press releases. It argues that the press releases undermine Hawke's allegation that Stable never intended to acquire Hawke. As Stable puts it, "Plaintiff's lack of factual allegations is even more stark when compared to The Stable Group's public reporting on no fewer than five acquisitions of other companies Defendant completed in the months immediately preceding and following

---

[3]     In adjudicating Rule 12(b)(6) motions, federal courts often consider public records, including materials publicly filed in separate lawsuits. *See, e.g., Quinn v. Doherty*, 637 F. Supp. 3d 647, 652 n.1 (D. Minn. 2022) (citing *C.H. Robinson Worldwide, Inc. v. Lobrano,* 695 F.3d 758, 764 (8th Cir. 2012)). Because Stable does not rely on the California complaint to support its Rule 12(b)(6) motion, it is not necessary to invoke this ground to justify considering the California complaint.

the acquisition discussion at issue in this proceeding." ECF No. 19 at 18. Taking judicial notice of the press releases to draw these Stable-friendly inferences would be improper. It would violate the fundamental rule that, in reviewing a Rule 12(b)(6) motion, a court must accept as true a complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

III

Hawke says Stable failed to comply with the meet-and-confer requirement imposed by this District's Local Rules. ECF No. 26 at 1–2; *see* D. Minn. LR 7.1(a). Hawke does not argue that Stable's Rule 12(b)(6) motion should be denied on this basis. *See generally* ECF No. 26. Hawke just says that, had Stable complied with the meet-and-confer requirement, "the frivolity of the present Motion would have been revealed and perhaps the trouble of opposing or ruling upon it avoided." *Id.* at 2. Stable argues that it met and conferred with Hawke on four separate occasions and that these communications satisfied Stable's obligations under Local Rule 7.1(a). ECF No. 27 at 6–10.

Our Local Rules describe a straightforward meet-and-confer requirement applicable to civil motions:

> **(a) Meet-and-Confer Requirement.** Before filing a motion other than a motion for a temporary restraining order or a motion under Fed. R. Civ. P. 56, the moving party must, if possible, meet and confer with the opposing party in a good-faith effort to resolve the issues raised by the motion. The moving and opposing parties need not meet in person.

D. Minn. LR 7.1(a). "Ordinarily, the moving party must file a meet-and-confer statement together with the motion that it relates to." D. Minn. LR 7.1(a)(1)(A). Among other things,

9

the meet-and-confer statement must certify that the moving party complied with Local Rule 7.1(a)'s meet-and-confer requirement.  D. Minn. LR 7.1(a)(1)(B).  Judges in this District sometimes deny motions because of the moving party's failure to comply with these requirements.  *See, e.g.*, *Damgaard v. Avera Health*, No. 13-cv-2192 (RHK/JSM), 2015 WL 1608209, at *9 (D. Minn. Apr. 10, 2015).  Other times, we look the other way.  *See, e.g.*, *P Park Mgmt., LLC v. Paisley Park Facility, LLC*, No. 21-cv-2128 (MJD/JFD), 2022 WL 14882465, at *11 (D. Minn. Oct. 26, 2022); *see also First Fin. Sec., Inc. v. Lee*, No. 14-cv-1843 (PJS/SER), 2016 WL 881003, at *7 n.10 (D. Minn. Mar. 8, 2016).

Stable did not comply with the District's meet-and-confer requirement.  Stable did not file a meet-and-confer statement with its Rule 12(b)(6) motion.  *See* ECF Nos. 19–24.  Stable filed a meet-and-confer statement after Hawke filed its response brief, but for reasons that will be explained, that was too late.  And the four groups of communications Stable relies on to show compliance with the meet-and-confer requirement do not.

(1) The first meet-and-confer-oriented communications Stable identifies occurred via email in February 2023, roughly six months before Hawke filed this case, and Stable acknowledges that these communications concerned not Stable's Rule 12(b)(6) motion here, but Stable's "prior motion to dismiss filed against the original complaint in the Central District of California."  ECF No. 27 at 6; ECF No. 28-1 at 2–3.  The California case included no fraud claim.  These communications did not concern this case, a fraud claim, or a motion to dismiss a fraud claim.  It is difficult to understand how they might reasonably be construed to show that Stable met its meet-and-confer obligation here.

(2) On April 3, 2023, after Hawke voluntarily dismissed the California complaint but more than four months before Hawke filed this case, Stable's counsel sent Hawke's counsel the following email:

> Before you refile this case in Minnesota district court, we want to discuss the merits with you. We have now reviewed all of the documents that [Hawke] sent to [Stable], and we are attaching them here for your reference. As you can see, the documents that [Hawke] shared with [Stable] contain <u>no employee names</u> and <u>no specific employee compensation information</u>. Nor was any such information ever requested by [Stable], as you can see in the email correspondence.

ECF No. 27 at 7; ECF No. 28-2 at 4. Stable asked Hawke to "reconsider making any allegations asserting that [Stable] *violated its obligations under the NDA*, which allegations would contradict the actual evidence," and stated that Stable "see[s] no actionable events at all and certainly no liability on [Stable's] part that would support the minimum requirements for pleading standards in California or Minnesota." ECF No. 27 at 7 (emphasis added) (quoting ECF No. 28-2 at 4). Again, these communications occurred months before this case was filed, concerned the merits of Hawke's contract claim, mentioned no fraud claim, and mentioned no motion to dismiss a fraud claim. They cannot reasonably be understood to show that Stable met its meet-and-confer obligation in this case.

(3) In June 2023, two months before Hawke filed this case and four months before Stable filed its Rule 12(b)(6) motion, Stable sent the following email to Hawke's counsel:

> Before you re-file though, we urge that you first respond to our prior correspondence showing that the documents that [Hawke] shared with [Stable] contain <u>no employee names</u> and <u>no specific employee compensation information</u>. Nor was any

> such information ever requested by [Stable]. . . .  We suggest
> that you reconsider your allegations and arguments in light of
> the evidence showing that these allegations lack merit.  Not
> only would such allegations not pass the pleading standards in
> federal court, but your submission of such a pleading may
> constitute sanctionable conduct under Rule 11.

ECF No. 28-2 at 2–3.  This communication suffers from the same problems as the previous

two—it occurred before this case was filed and said nothing about a fraud claim or a motion

to dismiss a fraud claim.

   (4) On November 7, 2023, after Hawke filed its response brief, Stable sent this email

to Hawke's counsel:

> We were surprised to see your Opposition's statement that we
> did not meet and confer with respect to our motion.  As you
> know, we met and conferred before the prior motion to dismiss
> as well as exchanged informal discovery and had multiple
> communications on this case, none of which resulted in any
> resolution.  We also believed you already knew that we were
> planning a motion to dismiss after you refiled the case in
> Minnesota.  We therefore believe that any meet and confer
> requirement was more than satisfied.

ECF No. 28-3 at 2–3.  Stable asked to "schedule a supplemental meet and confer call to

discuss the pending motion to dismiss," *id.* at 3, but Hawke refused the request as

"superfluous" because "the harm from [the motion's] filing has already occurred," *id.* at 2.

Then, on November 14, Stable filed a meet-and-confer statement representing that Stable's

counsel:

> conferred via phone and/or email with Gregory W. Patterson,
> Counsel for Plaintiff Hawke Media, LLC, on February 17,
> 2023, April 3, 2023, and June 26, 2023[,] with respect to the
> lack of any factual basis for the claims asserted in Plaintiff's
> Complaint and the futility of refiling the Complaint in
> Minnesota.  Defense Counsel also attempted to meet and

confer with Plaintiff's Counsel on November 7, 2023, but
Plaintiff's Counsel refused Defense Counsel's invitation to
further meet and confer.

ECF No. 29. The November 7 email's take on the parties' communications is not sensible

for the reasons described above (addressing the first three communications Stable relied on

to show it had complied with Local Rule 7.1(a)'s meet-and-confer requirement). And the

November 14 meet-and-confer statement is misleading. Though it claims that Stable's

counsel raised with Hawke's counsel "the lack of any factual basis for the claims asserted

in" this case, nothing shows that counsel's communications ever addressed Hawke's fraud

claim. To these concerns, add that these communications and Stable's filing of its

meet-and-confer statement came too late. To comply with Local Rule 7.1(a), a

meet-and-confer statement must be filed with the motion, not weeks later.[4]

The question is what to do about Stable's violation of the District's meet-and-confer

requirement. For common-sense reasons, this is one of those cases where it seems better

to look the other way. Though Hawke identified the violation, it did not argue that Stable's

Rule 12(b)(6) motion should be denied on this basis. *See* ECF No. 26 at 1–2. And Hawke's

position isn't that a good-faith meet-and-confer would have resulted in a compromise. It's

that a meet-and-confer would have given Hawke's counsel the opportunity to "reveal" the

---

[4]     Under Local Rule 7.1(a)(1)(A), it is true that "if the opposing party was unavailable
to meet and confer before the moving party file[d] its motion," then a moving party may
"supplement the motion with a meet-and-confer statement." Stable does not suggest, and
the record gives no reason to think, that Hawke's counsel was unavailable to meet and
confer regarding Stable's motion to dismiss the fraud claim before Stable filed the motion.

"frivolity" of the motion to Stable's counsel.[5]  The position Hawke's counsel has taken, in other words, reflects entrenchment too.   Finally, good-faith compliance with a meet-and-confer requirement doesn't guarantee the parties will reach agreement on all or even any of the issues on which they confer.  The better understanding of the record here is that the parties genuinely disagree regarding the merits of Stable's Rule 12(b)(6) motion. There's nothing wrong with that.  Stable's Rule 12(b)(6) motion will not be denied because of Stable's violation of the District's meet-and-confer requirement.

IV

A

Turn now to Stable's Rule 12(b)(6) motion, beginning with the taken-as-true facts alleged in the Amended Complaint.[6]  Hawke is "in the business of providing outsourced CMO (Chief Marketing Officer) services for other businesses."  Am. Compl. ¶ 13.  Hawke specializes in "the development and consultancy of customized digital marketing strategies to assist its clients in marketing goods or services to their customers," including developing "brand and creative art, web design, social media content," and other marketing services. *Id*.

---

[5]    Notwithstanding its assertion that Stable's Rule 12(b)(6) motion is frivolous, Hawke filed no Rule 11 or other sanctions motion.

[6]    Stable's motion was directed to Hawke's original Complaint.  *See* ECF No. 23. Hawke's filing of its Amended Complaint occurred after Stable filed its motion, in response to the order described earlier.  *See* ECF Nos. 31, 33.  But for its jurisdictional allegations, the Amended Complaint is identical to the original Complaint.   In this situation, it is appropriate to adjudicate Stable's motion as if it were directed to Hawke's Amended Complaint.  *See Cartier v. Wells Fargo Bank*, 547 F. App'x 800, 804 (8th Cir. 2013).  Neither party objected to this approach.

In May 2020, Stable represented to Hawke "that Stable was interested in potentially acquiring all or substantially all of [Hawke's] assets and liabilities or otherwise acquiring Stable's business through some type of merger or acquisition." *Id.* ¶ 14.  On May 6, 2020, to facilitate discussions regarding this possible business relationship, Hawke and Stable executed a non-disclosure agreement.  *Id.* ¶ 16; *see id.* Ex. 1 [ECF No. 33-1].

Several of the agreement's terms concerned the disclosure, use, and protection of "Confidential Information."  *See id.* Ex. 1.   The agreement defined "Confidential Information" as:

> Any information that has value to Disclosing Party and is not generally known to its competitors or the public, including but not limited to trade secrets, pricing or product information, technical specifications, know-how related to retailers, sales information, methods of operations, financial information, marketing plans, employee information, supplier information[,] customer information, or any other proprietary or secret information concerning the business and affairs of Disclosing Party, whether disclosed in writing, electronically or orally, and any compilation or combination of the foregoing.

*Id.* ¶ 1.  The agreement restricted the uses of Confidential Information by a "Receiving Party"; it provided that the "Receiving Party shall only use Confidential Information for the purposes of the Relationship and, without limiting the foregoing, shall not use Disclosing Party's Confidential Information in the research, product development or business operations of Receiving Party's business unless specifically permitted in writing by Disclosing Party."  *Id*. ¶ 3.  When used in the agreement, the word "Relationship" referred to "a business relationship or transaction" into which the parties might possibly enter.  *Id*. at 1.

The agreement included a choice-of-law clause providing that it "shall be governed by and construed in accordance with the laws of the State of Minnesota without reference to its conflicts of laws principles." *Id.* ¶ 9. And the agreement documented the parties' consent "to the exclusive jurisdiction of the state and federal courts located in Hennepin County, Minnesota." *Id*.

After the agreement's execution, Hawke furnished Stable with Hawke's Confidential Information, "some in writing and some orally, including nonpublic financial information, nonpublic employee information and compensation, and nonpublic client information." Am. Compl. ¶ 20. Hawke also provided Stable with a "complete Client List" that included "the total percentage revenue [Hawke] received from each Client," profit and loss statements with "detailed employee salary breakdowns," and other "client and employee information." *Id*. ¶¶ 21–23.

After it received this Confidential Information, Stable "never made any serious attempt to acquire [Hawke] or even engage in meaningful discussions to acquire [Hawke]," but rather "initiated a diligent and comprehensive effort . . . to hire away all of [Hawke's] key employees in the client management and sales roles while misusing the Confidential Information . . . [Hawke] provided to Stable." *Id*. ¶ 24. As a result, "at least four of [Hawke's] critical employees thereafter left their employment with [Hawke] to work for Stable over a very short period of time—taking numerous key and large revenue producing clients with them." *Id*. ¶ 26. Stable also solicited four other "critical" Hawke employees, two of whom "later quit in part due to the tremendous disruption Stable's actions caused [Hawke]." *Id*. ¶ 27.

16

According to Hawke, Stable's representations that it was genuinely interested in the possibility of acquiring Hawke "were false at the time they were made," because "[n]either Stable nor its agents or representatives had any intent on potentially acquiring all of [Hawke's] assets and liabilities or otherwise acquiring Stable's business." *Id*. ¶ 14. Rather, according to Hawke, "Stable's true intent was to obtain confidential information regarding [Hawke's] business practices, employees, employee compensation, and client information for the purpose of soliciting said employees and clients so as to expand its business as quickly as possible shortly prior to its own sale to a third party." *Id*. ¶ 15.

B

The basic pleading standards governing Stable's Rule 12(b)(6) motion are settled. In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Hawke's fraud claim implicates Rule 9(b)'s particularity-in-pleading requirement. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the particularity

17

requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).  "The claim must identify who, what, where, when, and how." *U.S. ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).  While Rule 9(b) requires particularity in pleading, "a complaint need not be filled with precise detail."  *Moua v. Jani-King of Minn., Inc.*, 613 F. Supp. 2d 1103, 1110 (D. Minn. 2009).  Rather, "Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading.  Thus, the particularity required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Costner*, 317 F.3d at 888.  "The level of particularity required depends on the nature of a case," *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012), and to determine whether a party has satisfied Rule 9(b), courts look to "the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading," *Payne v. United States*, 247 F.2d 481, 486 (8th Cir. 1957). !!!

C

To meet these pleading standards, Hawke must allege particular facts plausibly showing:

18

> (1) a false representation [or omission] of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) that the representation caused action in reliance thereon; and (5) pecuniary damages as a result of the reliance.

*U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011) (citation omitted); *see Minn. Forest Prods., Inc. v. Ligna Mach., Inc.*, 17 F. Supp. 2d 892, 908 (D. Minn. 1998).  Alleged representations or omissions concerning future events cannot be fraudulent without additional allegations plausibly showing that "the party making the representation had no intention of performing when the promise was made." *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000).  "[I]f a party conceals a fact material to the transaction, and peculiarly within his own knowledge, knowing that the other party acts on the presumption that no such fact exists, it is as much a fraud as if the existence of such fact were expressly denied, or the reverse of it expressly stated." *Thomas v. Murphy*, 91 N.W. 1097, 1098 (Minn. 1902) (citation omitted).

Framed in terms of Rule 9(b)'s requirement that a fraud complaint allege the who, what, where, when, and how, Hawke's fraud theory seems straightforward.  The "who" are Stable employees Nik Larsen and Chad Hetherington.  Am. Compl. ¶ 33.  The "what" are Larsen and Hetherington's misrepresentations that Stable "was interested in acquiring" Hawke, *id.*, when in fact Stable "had no intention of acquiring [Hawke], or making any reasonable offer to acquire" Hawke, *id.* ¶ 3.  The "when" and "where" seem obvious.  Hawke alleges that the misrepresentation was made beginning in May 2020.  *Id.* ¶ 14.  And this same month the parties executed the non-disclosure agreement.  *See id.* Ex. 1 at 1.

Though the "where" isn't alleged specifically in the Amended Complaint, the parties'
locations are, *id.* ¶¶ 6–7, and if "where" is understood to refer to the misrepresentation's
medium, the Amended Complaint alleges the misrepresentation was made verbally and via
email, *id.* ¶ 33. The Amended Complaint also describes "how"—or more accurately,
"why"—Stable completed the fraud. According to Hawke, Stable's actual, undisclosed
intention was to induce Hawke to share confidential information that Stable could and did
use to its benefit. *See id.* ¶¶ 3, 15, 34, 35. The Amended Complaint's problem is not that
its fraud theory is unintelligible.

The problem is that the Amended Complaint does not allege facts plausibly showing
fraudulent intent. The core allegation that Stable lacked intent to acquire Hawke appears
several times throughout the Amended Complaint, but always only as a conclusion. Hawke
alleges, for example: "Neither Stable nor its agents or representatives had any intent on
potentially acquiring all of [Hawke's] assets and liabilities or otherwise acquiring
[Hawke's] business, neither at the time these representations were made nor any other time
relevant herein." *Id.* ¶ 14. In a later paragraph, Hawke alleges: "Neither Larsen nor
Hetherington nor any other employee at Stable had any intention on genuinely exploring a
potential acquisition of [Hawke]." *Id.* ¶ 34. Absent from the Amended Complaint are Rule
9(b)-compliant factual allegations plausibly showing how or why Stable's intent should be
understood this way. To put it another way, the Amended Complaint does not identify
those aspects of Stable's conduct that justify a plausible inference that Stable possessed
fraudulent intent. To be clear, a party claiming breach of contract may pursue a parallel

fraud claim.[7]   But if the Amended Complaint's allegations here are enough, then it is difficult to see why every breach-of-contract case would not also be a fraud case.  Hawke's fraud claim will be dismissed for this reason.

## D

A dismissal with prejudice is typically appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. Cnty. of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sept. 26, 2013); *see Reinholdson v. Minnesota*, No. 01-cv-1650 (RHK/JMM), 2002 WL 32658480, at *5 (D. Minn. Nov. 21, 2002) (adopting report and recommendation), or when the record makes clear that any amendment would be futile, *see Paisley Park Enters. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019).  On the other hand, when claims "might conceivably be repleaded with success," dismissal without prejudice is ordinarily justified.  *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019).  Hawke's failure to plead fraudulent intent here in line with Rule 9(b) is better understood as falling in the latter category.

---

[7]       *See, e.g.*, *Cygnus Home Serv., LLC v. Legendary Baking, LLC*, No. 22-cv-687 (ECT/ECW), 2022 WL 18540493, at *2 (D. Minn. Aug. 26, 2022).

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.      Defendant The Stable Group Holdings, LLC's Motion to Dismiss Plaintiff Hawke Media, LLC's second cause of action for fraud [ECF No. 23] is **GRANTED**.

2.      Plaintiff Hawke Media, LLC's second cause of action for fraud is **DISMISSED without prejudice**.


Dated: June 24, 2024                           s/ Eric C. Tostrud
                                                      Eric C. Tostrud
                                                      United States District Court