UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Hawke Media, LLC,                                                File No. 23-cv-2496 (ECT/TNL)

            Plaintiff,

v.                                                                **OPINION AND ORDER**

The Stable Group Holdings, LLC, and Does
1–10,

            Defendants.

---

Zachary Paul Armstrong and Dwight G. Rabuse, DeWitt LLP, Minneapolis, MN, for
Plaintiff Hawke Media, LLC.

Michael A. Collyard and Peter Ihrig, Robins Kaplan LLP, Minneapolis, MN; and Teresa
Michaud, Cooley LLP, Los Angeles, CA, for Defendant The Stable Group Holdings, LLC.

---

In this diversity case, Defendant Stable Group Holdings seeks dismissal of three of
four claims asserted against it by Plaintiff Hawke Media. The claims are for tortious
interference with prospective business advantage, tortious interference with contract, and
unjust enrichment. The motion will be granted. The tortious-interference claims will be
dismissed because the operative Second Amended Complaint alleges only contractual
duties, meaning Minnesota's independent-duty rule bars the claims. The
unjust-enrichment claim also will be dismissed. Hawke pleaded the claim as an alternative
to its breach-of-contract claim, but Hawke does not—and could not—plausibly allege there
is a realistic chance the contract might not be found to govern the parties' relationship.

I

In May 2020, Hawke and Stable signed a mutual non-disclosure agreement; the agreement's stated purpose was to facilitate discussions regarding the possibility of Stable acquiring Hawke. Second Am. Compl. [ECF No. 68] ¶¶ 2, 15–16. Stable "agreed not to use [Hawke's] confidential information, which included but was not limited to sensitive financial information and employee information, for any purpose other than the potential acquisition." *Id.* ¶ 2; *see also* ECF No. 33-1 at 2 (defining "Confidential Information"[1]).

After the non-disclosure agreement was signed, Hawke shared confidential information with Stable, including Hawke's "nonpublic financial information, nonpublic employee information and compensation, and nonpublic client information," a "complete Client List with detailed allocations of the total percentage revenue [Hawke] received from each Client," and "profit and loss statements setting forth detailed employee salary breakdowns, with exact figures for various employee categories by area of marketing." Second Am. Compl. ¶¶ 17, 20–23. Hawke alleges Stable used this information to poach Hawke's key employees and clients, all in breach of the non-disclosure agreement. *Id.* ¶¶ 3, 25–26.

---

[1]    The non-disclosure agreement broadly defines "Confidential Information" as "any information that has value to Disclosing Party and is not generally known to its competitors or the public, including but not limited to trade secrets, pricing or product information, technical specifications, know-how related to retailers, sales information, methods of operations, financial information, marketing plans, employee information, supplier information[,] customer information, or any other proprietary or secret information concerning the business and affairs of Disclosing Party, whether disclosed in writing, electronically or orally, and any compilation or combination of the foregoing." ECF No. 68 at 15; ECF No. 33-1 at 2.

Hawke asserts four claims, all based on Stable's alleged misuse of Hawke's confidential information after the non-disclosure agreement was signed. In Count 1, Hawke alleges that Stable used Hawke's confidential information for Stable's benefit in breach of the non-disclosure agreement. *Id.* ¶¶ 12–31. In Count 2, Hawke alleges that Stable tortiously interfered with Hawke's prospective economic advantage "by trafficking in [Hawke's] Confidential Information and by recruiting [Hawke's] account representatives and the accounts for which the representatives were responsible, all in violation of [Stable's] obligations to [Hawke] under the Agreement and under law." Second Am. Compl. ¶¶ 32–37. In Count 3, Hawke alleges that Stable tortiously interfered with Hawke's "existing contracts and agreements with a variety of customers" by using confidential information Stable gained via the non-disclosure agreement to "cause [Hawke's] customers to breach or terminate their agreements and contracts with [Hawke] and to enter agreements with [Stable]." *Id.* ¶¶ 38–42. In Count 4, Hawke alleges that Stable was unjustly enriched through "its tortious and wrongful conduct," by which it "obtained and knowingly accepted a benefit, the revenues obtained and to be obtained through doing business with [Hawke's] former and/or potential customers." *Id.* ¶¶ 43–46. Stable has moved to dismiss Counts 2, 3, and 4. ECF No. 72.

## II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must

be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations establishing "a sheer possibility that a defendant has acted unlawfully" are not sufficient. *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). As our Eighth Circuit Court of Appeals explained in *Gregory v. Dillard's, Inc.*:

> [A] plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . , rather than facts that are merely consistent with such a right. While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.

565 F.3d 464, 473 (8th Cir. 2009) (en banc) (cleaned up).[2]

Ordinarily, courts do not consider matters outside the pleadings in resolving a Rule 12(b)(6) motion, *see* Fed. R. Civ. P. 12(d), but documents that are necessarily embraced by the pleadings may be considered without transforming the motion into one for summary

---

[2]    Stable cites *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). Pl.'s Mem. in Opp'n [ECF No. 77] at 7–8. But *Twombly*, 550 U.S. at 561–63, overruled *Conley* and its "no set of facts" standard. *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 806 (8th Cir. 2013) (Colloton, J., concurring in part and dissenting in part).

judgment.  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003) (citation omitted).  Materials embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (quoting *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)). Here, Hawke filed a declaration in opposition to Stable's motion to dismiss.  *See* Armstrong Decl. [ECF No. 78].  The declaration includes Hawke's counsel's account of the parties' discovery.  *See id.*  As such, the document does not fall within a category that is appropriate for consideration on a Rule 12(b)(6) motion.

A

Stable argues that Minnesota's independent-duty rule supports dismissal of Hawke's tortious interference claims.  Under Minnesota's independent-duty rule, "when a plaintiff seeks to recover damages for an alleged breach of contract he is limited to damages flowing only from such breach except in exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort."  *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 896 N.W.2d 115, 125 (Minn. Ct. App. 2017) (quotation omitted); *Klucas v. M.H. Graff & Assocs.*, No. 20-cv-762 (SRN/TNL), 2020 WL 6275971, at *3 (D. Minn. Oct. 26, 2020).  "An independent tort may accompany a breach of contract when the defendant has a legal duty to the plaintiff arising separately from any duty imposed in the contract."  *Staffing Specifix,* 896 N.W.2d 125–26 (quoting *Toyota-Lift of Minn., Inc. v. Am. Warehouse Sys., LLC*, 868 N.W.2d 689, 696 (Minn. Ct. App. 2015), *aff'd*, 886 N.W.2d 208 (Minn. 2016)).

The independent-duty rule supports dismissal of Hawke's tortious-interference claims. This is because the Second Amended Complaint's tortious-interference allegations merely parrot Hawke's breach-of-contract claim related to the alleged misuse of confidential information (as defined by the non-disclosure agreement), but they do not suggest any duty plausibly arising from anything other than that agreement. *Compare* Second Am. Compl. ¶¶ 12–31 (Count 1), *with id.* ¶¶ 32–37 (Count 2), *and id.* ¶¶ 38–42 (Count 3). In Count 2 (the claim for tortious interference with prospective economic advantage), Hawke alleges that "[Stable] interfered with [Hawke's] expectation, by undertaking acts to interfere tortiously with that expectation by trafficking in [Hawke's] Confidential Information and by recruiting [Hawke's] account representatives and the accounts for which the representatives were responsible, all in violation of [Stable's] obligations to [Hawke] under the Agreement and under law." *Id.* ¶ 35. And in Count 3 (the claim for tortious interference with contract), Hawke alleges that "[p]rior to and after entering the Agreement with [Stable], [Hawke] had existing contracts and agreements with a variety of customers." *Id.* ¶ 39. And "[a]s a result of [Hawke] providing the Confidential Information to [Stable], [Stable] became aware of [Hawke's] agreements and contracts with its customers." *Id.* ¶ 40. Stable subsequently "acted, and acted intentionally and without justification, to cause [Hawke's] customers to breach or terminate their agreements with [Hawke] and to enter agreements with [Stable]." *Id.* ¶ 41. These allegations concern only Stable's alleged breach of its contractual duty under the non-disclosure agreement. Hawke does not allege that Stable had any independent duty beyond its duties arising from

6

the non-disclosure agreement. The independent-duty rule therefore bars its tortious-interference claims.

Hawke's briefing on this issue doesn't change things. Hawke acknowledges that the breach-of-contract claim and the tortious interference claims are based on the same set of facts, stating that if "Hawke prevail[s] on its [non-disclosure agreement] breach claim, . . . the tortious interference and unjust enrichment claims fall[] by the wayside." Pl.'s Mem. in Opp'n [ECF No. 77] at 6. Yet Hawke proceeds to broadly argue that Stable's "independent duty" outside the non-disclosure agreement is "satisfied here" because "Stable acted inequitably and tortiously towards Hawke when it acted to disrupt the agreements and relationships between Hawke and its account representatives and thereby between Hawke and its customers." *Id*. at 1–2. These allegations do not describe Stable's independent duty. They restate Hawke's breach-of-contract claim by alleging Stable's misuse of Hawke's confidential information, received pursuant to the non-disclosure agreement, to target and poach Hawke's clients and employees. *See, e.g.*, Second Am. Compl. ¶¶ 12–28. The only duty that Hawke plausibly alleges is that which stemmed from the parties' non-disclosure agreement.

Hawke also argues it is "entitled to plead" tortious interference claims "in the alternative" to its breach of contract claim, *see, e.g.*, Pl.'s Mem. in Opp'n at 8, but this too is unpersuasive. "The Federal Rules of Civil Procedure do indeed authorize pleading in the alternative, but 'under those same Federal Rules of Civil Procedure, each of the alternative claims must be plausible." *Strategic Imp. Supply, LLC v. Meyers*, No. 22-cv-1699 (PJS/DJF), 2022 WL 16718673, at *2 (D. Minn. Nov. 4, 2022) (quoting

*Moreno v. Wells Fargo Bank, N.A.*, No. 18-cv-2760 (PJS/DTS), 2019 WL 1438248, at *7 (D. Minn. Apr. 1, 2019)). Aside from not alleging any independent duties or independently tortious conduct in which Stable engaged, Hawke has not plausibly alleged an "alternative" where the parties' non-disclosure agreement does not exist. Nor has Hawke identified any confidential information that Hawke provided to Stable outside of what was provided under the non-disclosure agreement. Rather, in alleging tortious interference, Hawke only relies on having provided Stable with "Confidential Information" as it is defined in the non-disclosure agreement. Likewise, Hawke relies on just the breach of the non-disclosure agreement as the basis for its tortious-interference claims; Hawke does not identify any contracts or clients that Stable allegedly interfered with outside of those that Stable became aware of through the parties' non-disclosure agreement. *See* Second Am. Compl. ¶¶ 17, 32–42. Hawke cannot rest on having pleaded its claims for tortious interference in the alternative when the only alternative it pleaded is Stable's alleged breach of the non-disclosure agreement.

Hawke suggests that further discovery might provide evidence or argument to support its tortious interference claims. *See* Pl.'s Mem. in Opp'n at 5 ("Here, it remains to be determined whether Stable succeeded in purloining Hawke's account representatives and clients through improper use of Hawke's confidential information provided in the Nondisclosure Agreement, or through other inequitable conduct."); *id*. at 6 ("[I]t may be established that, based on the information acquired through its discussions with Hawke, and independent of its acquisition of Hawke's written confidential documents, pursuant to the NDA Stable gained the ability to target and acquire the account representatives and

clients, and thereby breached a duty owed outside the contract obligations.").  But Hawke cannot avoid a Fed. R. Civ. P. 12(b)(6) dismissal of an implausible claim by claiming it needs (or could obtain) discovery to adequately plead that claim.  *See, e.g.*, *Doe v. St. John's Univ.*, No. 17-cv-2413 (PAM/LIB), 2017 WL 4863066, at *5 (D. Minn. Oct. 26, 2017) ("Plaintiff here has alleged no specific facts to support his negligence claim, asking the Court to allow him to proceed to discovery in the hopes of uncovering those facts.  But a lawsuit is not a 'fishing expedition,' and *Twombly* and *Iqbal* require more than a mere conclusory allegation of negligence." (quoting *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 675 (8th Cir. 2012))).

The independent-duty rule aside, Hawke's tortious-interference claims also could be dismissed because Hawke's allegations are conclusory and do not satisfy *Twombly* and *Iqbal*'s pleading standards.  The elements of a claim for tortious interference with prospective economic advantage are: (1) the existence of a reasonable expectation of economic advantage; (2) Stable's knowledge of that expectation of economic advantage; (3) Stable's intentional interference (with Hawke's reasonable expectation of economic advantage) that is either independently tortious or in violation of a state or federal statute or regulation; (4) a reasonable probability that, absent Stable's wrongful act, Hawke would have realized its economic advantage or benefit; and (5) damages.  *Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014). "Courts in this District have dismissed tortious interference with prospective economic advantage claims when the plaintiff 'identifi[es] no prospective business relationship with [a third party] that it was unable to pursue or lost out on because' of the defendant's

9

conduct, or 'fails to identify any reasonable expectation of a prospective business relation . . . with which [the defendant] interfered." *CH Bus Sales, Inc. v. Geiger*, No. 18-cv-2444 (SRN/KMM), 2019 WL 1282110, at *12 (D. Minn. Mar. 20, 2019) (quoting *Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1044–45 (D. Minn. 2013)).

Hawke's claim for tortious interference with prospective economic advantage fails because Hawke fails to "identify any specific customers or business relations it has lost, or may lose, due to [Stable's] conduct." *Geiger*, 2019 WL 1282110, at *12. Hawke's theory of this claim is that, after Stable was made aware of Hawke's "existing contracts and agreements with a variety of customers," Stable "acted intentionally and without justification, to cause [Hawke's] customers to breach or terminate their agreements and contracts with [Hawke] and to enter agreements with [Stable]." Second Am. Compl. ¶¶ 39, 41. Aside from these conclusory allegations, Hawke does not identify any specific customers or business relations it lost. Nor does Hawke allege how any claimed interference was "independently tortious or in violation of a state or federal statute or regulation."

A party may recover for the tort of intentional interference with contractual relations "by establishing (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his intentional procurement of its breach; (4) without justification; and (5) damages resulting therefrom." *Bouten v. Richard Miller Homes, Inc.*, 321 N.W.2d 895, 900 (Minn. 1982) (quoting *Royal Realty Co. v. Levin*, 69 N.W.2d 667, 671 (Minn. 1955)).

Aside from its allegations that relate directly to Stable's obligations under the non-disclosure agreement, discussed above, Hawke's theory of tortious interference with

contract is conclusory.  Hawke broadly refers to Stable having interfered with its "contracts and agreements with a variety customers," Second Am. Compl. ¶ 39, without identifying those contracts, agreements, or customers.  To plausibly allege a claim for tortious interference with contract, Hawke must at least allege these details.  *See Robertson v. Gov't Pers. Mut. Life Ins. Co.*, No. 21-cv-2236 (SRN/ECW), 2022 WL 3348331, at *9 (D. Minn. Aug. 12, 2022) (dismissing tortious interference with contract claim because plaintiffs failed to "identify the [parties] that are in breach of their contracts with the [plaintiff], the specific conduct that [the defendant] engaged in to cause the breach, and the type of contracts at issue"); *see also Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 227 (S.D.N.Y. 2013) ("[A]s a rule, conclusory allegations of interference with an unspecified contract are insufficient to plead tortious interference.").

B

Stable argues that Hawke's unjust-enrichment claim should be dismissed because the non-disclosure agreement covers the entire subject matter of this lawsuit, and Hawke offers no plausible factual allegations to support an alternative unjust-enrichment claim. Hawke counters that it may plead its unjust enrichment claim in the alternative.  *See* Pl.'s Mem. in Opp'n at 12.

To state an unjust enrichment claim, Hawke must allege Stable "has knowingly received or obtained something of value for which [it] in equity and good conscience should pay."  *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996) (internal quotation marks omitted); *see Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 195–96 (Minn. Ct. App. 2007).  As an equitable remedy, unjust

11

enrichment "does not apply when there is an enforceable contract" governing the parties' relationship. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012), *superseded by statute on other grounds as recognized in Hall v. City of Plainview*, 954 N.W.2d 254, 271 (Minn. 2021); *see U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981). Unjust enrichment "rest[s] on notions of justice and fairness rather than on any actual agreement between the parties." *O'Brien & Wolf, LLP v. S. Cent. Minn. Elec. Workers' Fam. Health Plan*, 923 N.W.2d 310, 316 (Minn. Ct. App. 2018). The alternative pleading of unjust enrichment and breach of contract "is inappropriate in situations . . . where the complaint sets forth no plausible basis to invoke unjust enrichment because there is no dispute that the [contract] is valid and that the conduct complained of is explicitly covered by that express contract." *Strategic Imp. Supply*, 2022 WL 16718673, at *2 (quoting *Baumgardner v. Bimbo Food Bakeries Distrib.*, 697 F. Supp. 2d 801, 816 (N.D. Ohio 2010)).

Hawke has not pleaded any factual scenario to support an alternative unjust enrichment claim that is not duplicative of its breach of contract claim. "In order to plead a plausible claim for unjust enrichment, . . . [Hawke] must plead (at least in the alternative) that it did not have a contract with [Stable] or that its contract with [Stable] was not enforceable for some reason . . . and, in support of that allegation, [Hawke] must plead 'enough facts' to make its allegation 'plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Hawke has not done so. Hawke alleges that "[b]y its tortious and wrongful conduct, [Stable] has obtained and knowingly accepted a benefit, the revenues obtained and to be obtained through doing business with [Hawke's] former and/or potential

customers." Second Am. Compl. ¶ 44. But in this respect, Hawke relies just on factual allegations reflecting Stable's obligations under the non-disclosure agreement. There is no dispute that an enforceable agreement governs the parties' conduct—Stable has admitted that the parties' non-disclosure agreement is a "binding contract." *See* Def.'s Answer and Affirmative Defenses (to First Amended Complaint) [ECF No. 40] ¶ 31. Because there is no dispute that the non-disclosure agreement is valid and covers the complained-of conduct, Hawke cannot plausibly allege an unjust-enrichment claim.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant Stable's Motion to Dismiss Hawke's Tortious Interference and Unjust Enrichment Claims [ECF No. 72] is **GRANTED**.


Dated: February 7, 2025                          s/ Eric C. Tostrud
                                                 Eric C. Tostrud
                                                 United States District Court